**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| MARVIN HUNT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-04573-TWP-MG |
| | ) | |
| INDIANA DEPARTMENT OF LOCAL | ) | |
| GOVERNMENT FINANCE State of Indiana, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 filed by Defendant Indiana Department Of Local Government Finance ("DLGF") (Filing No. 49). Plaintiff Marvin Hunt ("Hunt") initiated this action alleging age discrimination and retaliation in violation of 29 U.S.C. § 623, the Age Discrimination in Employment Act ("ADEA"); and race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3 ("Title VII") and 42 U.S.C. § 1981 ("Section 1981") (Filing No. 1). DLGF moves for summary judgment on all claims asserting they have not discriminated or retaliated against Hunt.  For the following reasons, summary judgment is **granted in part and denied in part.**

**I.      BACKGROUND**

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Hunt as the non-moving party.  *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Hunt is a Black man, born in 1968, and he has strong credentials in the field of Information Technology ("IT") (Filing No. 56-1 at 2–3).  He earned a Bachelor of Science degree in Computer Information Technology from Indiana University-Purdue University Indianapolis ("IUPUI") in 1996, a Master of Business Administration degree in Applied Management from Indiana Wesleyan University in 2008, and a Doctor of Business Administration doctorate in Information Systems Management from Walden University in 2014.  *Id*. at 2.  Hunt's career spanned twenty-three years in IT and included numerous positions as a program analyst, software developer, and a four-year stint as an adjunct professor at IUPUI's School of Engineering and Technology from 2014 to 2018. *Id*. at 3–4.  From June 2015 to January 2019, he was employed by the DLGF as a Database Analyst Senior in the Information Systems Department.  *Id.* at 2.  His duties included performing database maintenance, systems analysis, and supporting all internal and external users of local finance data. *Id*. at 4. All of the employees in the department were non-Black except for Hunt. (Filing No. 56-2 at 3).

One of the first tasks assigned to Hunt after joining DLGF was a major project involving the Local Government Database ("LOGODABA").  (Filing No. 56-1 at 5).  He was responsible for implementing a replacement system for LOGODABA and ensuring the migration of that data to a successor system by December 2015 (Filing No. 51-1 at 20–23).  Hunt "knew nothing about LOGODABA," when he began working at DLGF as a Database Analyst Senior.  *Id.* at 21.  He soon realized that additional resources were needed for the project, but he was not given extra assistance despite being told otherwise.  *Id*.  At some point in 2015, Hunt informed his supervisors that additional contractors were needed for the LOGODABA project and that at least eighteen to twenty-four additional months would be needed to complete the task.  His request to hire additional

contractors was denied and he was not given a response about his determination that more time was needed to complete the project. *Id*. at 24–26, 33.

Hunt was able to successfully complete the LOGODABA project sometime in late 2017 or early 2018 (Filing No. 56-1 at 5). Following the completion of the project, DLGF asked him to contribute further work to the LOGODABA Database "to make it more efficient and usable by non-DLGF staff." *Id*. at 6. This additional work was "extensive and complex." *Id*. Ultimately, the LOGODABA project was not "years in delay," but rather it was "delayed a few months because more work was added to the project." *Id*.

On August 4, 2017, Hunt filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination based on his supervisors conduct. *Id*. at 5. The Charge was dismissed in June 2018 (Filing No. 56-3 at 6). In August 2018, Hunt applied for a Director of Information Systems position in the Information Systems Department (Filing No. 51-2 at 34). He was one of three candidates for the position with the other two being Jeffrey Buchanan ("Buchanan") and Scott Maitland ("Maitland") (Filing No. 51-7 at 1). Maitland, who is white and twenty-six years old, was ultimately selected for the position. *Id*.; (*see also* Filing No. 56-2 at 3).

DLGF Deputy Commissioner Matthew Parkinson ("Parkinson")—one of Hunt's supervisors who participated in the interviews for both Hunt and Maitland—agreed that Hunt was qualified for the role but he believed Maitland's "answers during the interview and his time working for DLGF displayed the skills and the approach that were needed for the division at that time." (Filing No. 51-5 at 24–35.) The ultimate decision-maker was DLGF Commissioner Wesley Bennett ("Bennett") who averred that he made the decision to hire Maitland because Maitland was "better qualified" than Hunt (Filing No. 51-9 at 11). Bennett reports that he formed his decision

to select Maitland for the position based on Maitland's qualifications from his past employment with DLGF and because his current work experience was better than Hunt's. *Id*. at 12.

The pay structure for the Database Analyst Senior position changed by August 2018, which made Hunt eligible for a pay increase (Filing No. 56-3 at 15). Hunt's pay was not timely adjusted in August 2018. *Id*. DLGF contends that Hunt's role was being reviewed after the Information Systems Director position was filled and that eventually, Hunt's pay was adjusted, and he was given the retroactive pay he was owed. *Id*. Sometime after Maitland was selected as Director of Information Systems in August 2018, a decision was made by Maitland along with Bennett, Parkinson, and General Counsel of DLGF Daniel Shackle (*see* Filing No. 51-9 at 6, 15), to reclassify Hunt from Database Analyst Senior to Applications Systems Analyst/Programmer Intermediate ("ASAP Intermediate") (Filing No. 56-1 at 5). Hunt's salary was reduced by $29,000.00 because of this reclassification. *Id*. However, Hunt continued to perform the functions of a Database Analyst Senior even after being made an ASAP Intermediate. *Id*.

During Hunt's time at DLGF, he received several performance appraisals with varying determinations. In 2016, Hunt's appraisal noted an overall performance rating of "Needs Improvement," signifying that his work performance was "Sometimes acceptable, but not consistent," and that he "need[ed] improvement to meet expectations." (Filing No. 51-3 at 5.) In 2017, Hunt was placed on a Work Improvement Plan (*see* Filing No. 51-4 at 1–2) which he successfully cleared, and his 2017 appraisal noted an overall performance rating of "Meets Expectations." (Filing No. 51-5 at 18.) DLGF defined "Meets Expectations" as "Consistently meet[ing] the requirements of the job in all aspects." *Id*. In his 2018 performance appraisal, Hunt received another "Meets Expectations" overall rating (Filing No. 51-2 at 21).

In early 2019, Hunt submitted his resignation letter to DLGF (Filing No. 51-10 at 49).  On November 15, 20219, Hunt filed suit against DLGF alleging race discrimination and retaliation in violation of Title VII and Section 1981, as well as age discrimination and retaliation in violation of the ADEA (Filing No. 1).  On June 3, 2021, DLGF moved for summary judgment on all claims (Filing No. 49).

## II.    <u>LEGAL STANDARDS</u>

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted).  Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).  "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

## III.   DISCUSSION

Hunt asserts that his employer failed to promote him because of his age (forty-eight) and race (Black), after he was first demoted, and then passed over for a position which was given to a twenty-six year old white male. He asserts in Counts I and IV of his Complaint that DLGF violated Title VII by discriminating and retaliating against him based on his race (Filing No. 1 at 3–4). He asserts in Counts II and V that the alleged retaliation and discrimination based on race also violated Section 1981. *Id.* In Counts III and VI, Hunt asserts that DLGF violated the ADEA by discriminating and retaliating against him based on his age. *Id.*

DLGF argues that there is no evidence that the decision to not select Hunt for the Information Systems Director role was motivated by discriminatory or retaliatory animus (Filing No. 50 at 1). Similarly, the decision to eliminate Hunt's job classification and reclassify him was necessitated by the needs of the department and there is no evidence of discriminatory or retaliatory motive presented. *Id.* DLGF contends it is entitled to judgment as a matter of law. The Court will first address the race discrimination claims before turning to the ADEA claims.

## A.   Title VII Discrimination Claim

Title VII commands that it is "unlawful … for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1); *see Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1738 (2020).  In 1991, Congress amended Title VII, adding that "an unlawful employment practice is established when the complaining party demonstrates that race … was a motivating factor for any employment practice, even though other factors also motivated the practice." *Boyd v. Illinois State Police*, 384 F.3d 888, 895 (7th Cir. 2004); *see also* 42 U.S.C. § 2000e–2(m).

The Seventh Circuit has held that, "*all* discrimination cases present the same basic legal inquiry:  At the summary-judgment stage, the proper question to ask is 'whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the [plaintiff's] discharge or other adverse employment action.'" *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017) (quoting *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (emphasis in original).  In *Ortiz*, the Seventh Circuit overruled a series of cases dividing discrimination claims into "direct" and "indirect" categories and assigning different legal standards to each. *See* 834 F.3d at 765 ("Evidence is evidence. Relevant evidence must be considered and irrelevant evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled 'direct' or 'indirect.').

### 1.     *Prima Facie* **Case**

In determining discrimination cases, the legal standard is *Ortiz*'s inquiry of whether the evidence, considered as a whole, permits the reasonable factfinder to conclude that a proscribed

factor caused the adverse action.  834 F.3d at 765.  As a means of "organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases," the court employs the well-known burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017).

Pursuant to *McDonnell Douglas*, a plaintiff must first show that "(1) he is a member of a protected class; (2) he performed his job to his employer's expectations; (3) he suffered an adverse employment action; and (4) one or more similarly situated individuals outside his protected class received better treatment."  *Ferrill*, 860 F.3d at 500 (7th Cir. 2017) (citation omitted). If the plaintiff demonstrates these elements, "the burden shifts to the employer to come forward with a legitimate, nondiscriminatory reason for the challenged employment action." *Id.*  "If the employer does this, then the burden shifts back to the plaintiff to produce evidence establishing a genuine dispute of fact about whether the employer's reason was a pretext for discrimination." *Id.* The Seventh Circuit continues to recognize the *McDonnell Douglas* burden-shifting framework, sometimes referred to as an "indirect" means of proving employment discrimination, as one method for presenting circumstantial evidence.  *Ortiz*, 834 F.3d at 765 ("[A]ll evidence belongs in a single pile and must be evaluated as a whole.  That conclusion is consistent with *McDonnell Douglas* and its successors.").

Hunt and DLGF both analyze Hunt's Title VII discrimination claim under the *McDonnell Douglas* burden-shifting framework, however, they each use slightly differing elements to assess whether a *prima facie* case has been met. While DLGF uses the elements of the *McDonnell Douglas* framework described above by the Court (*see* Filing No. 50 at 8), Hunt employs the *prima facie* elements used to establish a Title VII failure-to-promote discrimination claim based on the

adverse employment action he alleges he suffered (Filing No. 55 at 24). To demonstrate a *prima facie* failure-to-promote claim under Title VII, a plaintiff "must produce evidence showing that: (1) [he] was a member of a protected class; (2) [he] was qualified for the position sought; (3) [he] was rejected for the position; and (4) the employer promoted someone outside of the protected class who was not better qualified for the position." *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 892 (7th Cir. 2016) (citing *Jaburek v. Foxx*, 813 F.3d 626, 631 (7th Cir. 2016)).

The second prong of each of the parties' versions of the burden-shifting framework— whether a plaintiff meets an employer's expectations and whether they are qualified for the position sought—relate to the same principle: an assessment of an employee's suitability for the role they currently occupy or seek to attain. *See McDonnell Douglas*, 411 U.S. at 801 ("The broad, overriding interest, shared by employer, employee, and consumer, is *efficient and trustworthy workmanship* assured through fair and racially neutral employment and personnel decisions.") (emphasis added). The third prong in both sets of elements outlined by the parties concerns whether a plaintiff has suffered an adverse employment action, and such action can be a failure to promote, failure to hire, or a demotion. *See Wathen v. Allison Engine Co. Div. of Rolls Royce Aerospace Grp.*, 102 F. Supp. 2d 1015, 1022 (S.D. Ind. 2000) (discussing adverse actions, "such as demotion or termination, or failure to provide a benefit (e.g., hiring, *promotion*, training)") (emphasis added). Finally, the fourth prong in both versions of the framework described by the parties concerns whether an employee outside of the protected class is treated more favorably. In the failure-to-promote context, "more favorable treatment" would undoubtedly be a lesser qualified individual being promoted in lieu of the qualified plaintiff alleging discrimination. Here, elements two, three, and four of the respective iterations of the burden-shifting framework articulated by Hunt and DLGF are sufficiently analogous. *See Wathen,* 102 F. Supp. 2d at 1022

("Still, the *prima facie* elements are not inflexible and 'will inevitably vary' depending on the 'type and circumstances of employment action under attack.'") (quoting *Loyd v. Phillips Bros., Inc.*, 25 F.3d 518, 523 (7th Cir. 1994)); *see also McDonnell Douglas*, 411 U.S. at 802 n. 13.

DLGF does not dispute that Hunt is Black and that he meets the first prong of the *McDonnell Douglas* inquiry as a member of a protected class. Regarding the second prong, DLGF asserts that Hunt, at times, struggled in his role as a Database Analyst Senior and he failed to deliver the LOGODABA project on time (Filing No. 50 at 2). However, DLGF does not directly dispute that Hunt performed his job to DLGF's expectations under the burden-shifting method to determine discrimination. The evidence in the record shows that two out of the three most recent annual performance appraisals for Hunt rated his overall performance as "Meets Expectations," despite noting areas of needed improvement (Filing No. 51-5 at 18; Filing No. 51-2 at 21). Hunt asserts that he meets the second prong of the *prima facie* inquiry because he was qualified for the Director of Information Systems position, which is also undisputed by DLGF (Filing No. 51-5 at 25) (responding "Yes" to the question "Was Mr. Hunt qualified for the [Director of Information Systems] position?" during Parkinson's deposition). Accordingly, Hunt satisfies elements one and two to prove a *prima facie* discrimination case under the *McDonnell Douglas* analysis.

DLGF acknowledges that the alleged adverse employment actions against Hunt are "(a) selecting another candidate for the Director position and (b) eliminating the Database Analyst Senior position," and offering Hunt a diminished role and lesser pay (Filing No. 50 at 9). Hunt applied for the Director of Information Systems position, he contends that he was qualified for the position, and he was rejected for the position, which is an adverse employment action. *Carter v. Chicago State Univ.*, 778 F.3d 651, 660 (7th Cir. 2015) ("In terms of his adverse employment action, [plaintiff] must show that he applied, was qualified, and was rejected for the position

sought."). Hunt satisfies the third element of the *prima facie* case to establish a failure-to-promote discrimination claim under Title VII.

With respect to the fourth element of the burden-shifting inquiry, DLGF asserts that there is no evidence that a similarly-situated employee outside of Hunt's protected class was treated more favorably (Filing No. 50 at 9). DLGF contends that Maitland is not a valid comparator because he and Hunt are not comparable in all material respects. *Id*. Hunt contends that Maitland was "overwhelmingly less qualified" than he was (Filing No. 55 at 25). This contention is supported by the evidence in the record.

In addition to citing his twenty-two years of Information Systems experience compared with Maitland who had a little over five years of experience in the same field, Hunt outlines the glaring chasm between his professional and academic qualifications and that of Maitland. *Id*. at 26. When Maitland previously worked for DLGF before being hired for the director role, he was primarily in an entry-level position for nearly the entire duration and the position "did not require a degree." *Id*. Hunt argues that when Maitland was promoted to a senior position, he had only 5 ½ years of Information Systems experience, if you include one year when he worked as a Media Clerk where his duties included general library functions such as helping to check out books and putting books away. *Id*. On the other hand, Hunt possessed several advanced degrees in the relevant field, including a doctorate, served as an adjunct professor teaching courses in Information Systems, and was employed by DLGF much longer than Maitland was (Filing No. 56-1 at 7–17).

Construing the facts in a light most favorable to Hunt as the non-moving party, a reasonable factfinder could easily determine that Maitland was not as qualified as Hunt for the Director of Information Systems position. Hunt satisfies the fourth element of the *McDonnell Douglas* inquiry and has made a *prima facie* showing of a failure-to-promote discrimination claim under Title VII.

The burden now shifts to DLGF to provide a legitimate, nondiscriminatory reason for its decision to not promote Hunt to the Director of Information Systems position. *See Adams v. City of Indianapolis*, 742 F.3d 720, 735 (7th Cir. 2014).

### 2.      Pretext

DLGF asserts that the legitimate, nondiscriminatory reason for not selecting Hunt as the Director of Information Systems was because of Parkinson's assessment that Maitland was the stronger candidate (Filing No. 50 at 10).   DLGF maintains that this assessment was based on Maitland's record which they argue Hunt "simply could not match." *Id*.   In support of this assessment, DLGF cites a "Justification Memo" written by Parkinson explaining to the Director of Human Resources, Casey Parent, (née Spivey), why Maitland was the most qualified candidate (Filing No. 51-8).  DLGF also relies on Parkinson's deposition testimony in support of its decision (Filing No. 51-5).  The Justification Memo states,

> [Maitland] is a former DLGF employee and is familiar with DLGF technology and business processes. Furthermore, in his time with the Department, [Maitland] displayed an aptitude for translating business requirements into technical products. Those skill sets will be invaluable in his new role [as Director of Information Systems]. With his experience at the Department and the skills he has demonstrated, [Maitland] will be able to hit the ground running and contribute immediately upon his hire.

(Filing No. 51-8 at 1.)

In his deposition, Parkinson avers that Maitland was a strong performer in developing ways to make DLGF's business requirements more efficient, particularly on two previous projects (Filing No. 51-5 at 60-61).  Hunt responds that DLGF's stated reason is "clearly false," and is a pretext for not selecting him as the Director of Information Systems despite his stronger qualifications (Filing No. 55 at 27).  DLGF replies that Hunt has not designated evidence sufficient to establish pretext and has designated no evidence that would permit a conclusion that DLGF's

stated belief that Maitland was the better candidate is untrue (Filing No. 59 a 6–7).  The Court disagrees. Hunt has designated sufficient evidence to support his position. As noted above, Maitland's prior experience with DLGF was only from May 2014 to September 2015, Maitland was an entry level ASAP Associate for all but a few weeks, and one of Maitland's co-workers testified that Maitland was a poor performer when he worked as an ASAP Associate. (Filing No. 56-2 at 3).

An employer can make a mistake or act unfairly when it comes to making personnel choices while still not being discriminatory in its decision-making. The Seventh Circuit has consistently held that the courts "do not sit as a kind of 'super-personnel department' weighing the prudence of employment decisions made by firms charged with employment discrimination." *O'Regan v. Arb. Fs., Inc.*, 246 F.3d 975, 984 (7th Cir. 2001) (quoting *Wollenburg v. Comtech Mfg. Co.*, 201 F.3d 973, 976 (7th Cir. 2000)).  To succeed on a failure-to-promote claim, the plaintiff must possess credentials "so superior to those of the person selected such that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question in order to show that the employer's reasons for denying the promotion were pretextual."  *Murray v. Golden Rule Ins. Co./United Health Corp.*, 23 F. Supp. 3d 938, 954 (S.D. Ind. 2014) (internal quotation marks and citations omitted).

To establish pretext, Hunt must show either that DLGF was motivated by a discriminatory reason or that DLGF 's proffered reason is unworthy of credence. *See McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 372 (7th Cir.1992).  Based on the designated evidence, the Court determines that a reasonable factfinder could find that Maitland was not nearly as qualified as Hunt for the Director of Information Systems position.  DLGF argues that Hunt and Maitland did not have "comparable qualifications" for the director role which required "excellent planning, management

skills, effective communication skills, and excellent writing, communication, and public speaking ability." (Filing No. 50 at 9–10.)  However, DLGF does not provide evidence demonstrating that Maitland possessed these qualities which would support its determination that he was the stronger, more qualified candidate.  The record contains Hunt's eleven-page resume detailing his extensive years of experience in IT and senior information systems roles as well as his awards, teaching experiences in the relevant field, and deposition testimony (Filing No. 56-1 at 7–17; Filing No. 51-1; Filing No. 51-2).  The designated evidence not only supports that Hunt had an MBA and doctorate in Information Systems Management, but that he had twenty-three years of experience in Information Technology, he had worked for DLGF since June 2015 as a Database Analyst Senior, he successfully completed the LOGODABA conversion without the assistance he was told would be provided; and his 2017 and 2018 evaluations rated him as meets expectation and his performance reviews.  The record also contains Maitland's deposition testimony wherein he details his professional and academic qualifications (Filing No. 51-10).  Finally, the record contains testimony from Bennett—the DLGF Commissioner and decision-maker for selecting the Director of Information Systems—averring that he selected Maitland over Hunt because Maitland was "better qualified" than Hunt (Filing No. 51-9 at 11).

In reviewing this designated evidence, a reasonable factfinder could easily find that Maitland's credentials and experiences were not superior (or even equal) to Maitland's  credentials and professional experience. There is a genuine issue of material fact in dispute regarding whether Bennett is truthful in his assertions that Maitland was more qualified and a stronger candidate for the position. Accordingly, summary judgment in favor of DLGF on Hunt's Title VII failure-to-promote discrimination claim (Count I) is **denied**.  *See Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 676 (7th Cir. 2003) ("Because a fact-finder may infer intentional discrimination

from an employer's untruthfulness, evidence that calls truthfulness into question precludes a summary judgment."). A reasonable factfinder could conclude that Hunt's race or other proscribed factor caused the adverse employment action. *Ferrill*, 860 F.3d at 499.

**B.   Section 1981 Discrimination and Retaliation Claims**

Hunt abandoned his Section 1981 claims in his response to DLGF's Motion because he fails to address them in any meaningful way. *See Teklehaimanot v. Park Ctr., Inc.*, 804 F. Supp. 2d 886, 902 (N.D. Ind. 2011) ("those claims are abandoned because they were not addressed in the response to the motion for summary judgment."). Hunt offered no basis for the Court to decide his Section 1981 claim of discrimination and retaliation and instead focuses his arguments on discrimination and retaliation based on race and age pursuant to Title VII and the ADEA (*see* Filing No. 55 at 24). As such, the Court will consider his Section 1981 discrimination and retaliation claims waived. *See Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) (holding that because the plaintiffs "did not provide the district court with any basis to decide their claims, and did not respond to the City's arguments, these claims are waived"); *see also Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument … results in waiver.").

The Court **grants** summary judgment for DLGF on Hunt's Section 1981 discrimination claim in Count II and his Section 1981 retaliation claim in Count V.

**C.   ADEA Discrimination Claims**

The ADEA makes it illegal for an employer to "discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1); *see Gross v. FBL Financial Services*, 557 U.S. 167, 176–77, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009) (holding that the ADEA only allows but-for, not mixed-motive, age discrimination claims); *Senske v. Sybase, Inc.*, 588 F.3d 501, 506 (7th Cir.

2009) (requiring plaintiff to show ADEA claim by preponderance of the evidence). Whether through direct or circumstantial evidence, courts must assess employment discrimination claims under the ADEA by considering all of the evidence together in order to determine whether a reasonable factfinder could "conclude that the plaintiff's … proscribed factor caused the discharge...." *See Ortiz*, 834 F.3d at 765. Such evidence can include a direct admission by the decision-maker that he based his actions upon the prohibited animus, or a plaintiff can show evidence that allows a reasonable factfinder to infer intentional discrimination. *Brown v. DS Servs. of Am., Inc.*, 246 F. Supp. 3d 1206, 1216 (N.D. Ill. 2017).

Like race discrimination under Title VII, a plaintiff may show age discrimination by employing the *McDonnell Douglas* burden-shifting approach. The plaintiff alleging age discrimination must first set forth a *prima facie* case of age discrimination and, once achieved, the employer must articulate a nondiscriminatory reason for the employment decision. The plaintiff then must present evidence that the reason proffered by the employer was pretextual. To establish a *prima facie* case of age discrimination for an ADEA failure-to-promote claim, a plaintiff "must show: (1) [he] was 40 or older, (2) [he] applied for and was qualified for the position sought, (3) [he] was rejected for the position, and (4) someone substantially younger than [him] was given the position." *Schaffner v. Glencoe Park Dist.*, 256 F.3d 616, 620 (7th Cir. 2001).

The Court's burden-shifting analysis of Hunt's race discrimination claim above is applicable here and needs no repetition. Hunt satisfies elements one, two, and three of the age discrimination inquiry under the *McDonnell Douglas* approach. Regarding the fourth element, Maitland was approximately twenty-eight years old (*see* Filing No. 56-11 at 10) when he was selected for the Director of Information Systems role over Hunt who was at least forty eight years old (Filing No. 56-1 at 2). The United States Supreme Court has held that with respect to the

16

fourth element under the *McDonnell Douglas* framework in an age discrimination case, a plaintiff must show that the position was given to someone "substantially younger." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 310 (1996). The Seventh Circuit holds that a ten-year age gap is substantial. *See Richter v. Hook-SuperRx, Inc.*, 142 F.3d 1024, 1028–29 (7th Cir. 1998) (holding "a ten-year age difference between the plaintiff and her replacement is presumptively substantial"); *see also Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 893 (7th Cir. 1997) ("[t]en years is a reasonable threshold establishing a 'significant' and 'substantial' gap, which is what *O'Connor* demands"). Maitland was substantially younger than Hunt—approximately 22 years younger—when he was selected for the director role over Hunt.

Hunt has made a *prima facie* case for age discrimination under the ADEA. In shifting the burden to DLGF and conducting an analysis of whether the proffered nondiscriminatory reason for its employment action was pretextual, the same triable issue in the race discrimination context is present here. While DLGF contends that Maitland was the stronger and more qualified candidate, there is a genuine issue of material fact in dispute as to whether this is true given the broad disparity in credentials and professional experiences between Hunt and Maitland. As noted above, in reviewing the designated evidence, a reasonable factfinder could infer intentional age discrimination in DLGF's decision to not promote Hunt to the director position. This precludes summary judgment in DLGF's favor. The Court **denies** summary judgment for DLGF on Hunt's ADEA discrimination claim in Count III.

**D.    Title VII And ADEA Retaliation Claims**

An employer may not retaliate against an employee because that person opposes a practice prohibited by Title VII, files a charge of discrimination under Title VII, or testifies, assists, or participates in an investigation or proceeding under Title VII. 42 U.S.C. § 2000e-3(a). Similarly,

under the ADEA, retaliation for engaging in protected activity is also prohibited.  29 U.S.C. § 623(d).

Employees may prove a *prima facie* retaliation claim under Title VII and the ADEA in two ways: either through the direct method or the indirect method.  "The direct method requires the plaintiff to simply present evidence satisfying the elements of the retaliation claim: (1) he engaged in a protected activity, (2) he suffered an adverse action, and (3) a causal connection exists between the activity and the adverse action."  *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018) (citation omitted).  Alternatively, the indirect method of proof in a retaliation claim uses the burden-shifting *McDonnell Douglas* framework.

To prove a *prima facie* Title VII or ADEA retaliation claim under the burden-shifting approach, a plaintiff must show that: (1) [he] engaged in statutorily protected activity; (2) [he] met [his] employer's legitimate expectations; (3) [he] suffered an adverse employment action; and (4) [he] was treated less favorably than similarly situated employees who did not engage in statutorily protected activity.  *Bos. v. U.S. Steel Corp.*, 816 F.3d 455 (7th Cir. 2016).  The direct and indirect methods are "just means to consider whether one fact ... caused another ... and therefore are not 'elements' of any claim.  *Lewis*, 909 F.3d at 866 (citation omitted).  As the Court noted in its discrimination analysis, the evidence is still evaluated as a whole, regardless of which method is employed to assess a retaliation claim.  *See Ortiz*, 834 F.3d at 763.

There is no dispute that Hunt engaged in protected activity when he filed an EEOC Charge in August 2017 ([Filing No. 56-3 at 5](#)).  Hunt has satisfied the first element under the direct method to prove a *prima facie* retaliation claim because formal EEOC charges are "the most obvious form of statutorily protected activity."  *Coleman v. Donahoe*, 667 F.3d 835, 859 (7th Cir. 2012) (citation omitted).

Hunt asserts that the adverse action he suffered was his demotion from a Database Analyst Senior to an ASAP Intermediate position in 2018 (Filing No. 55 at 28). While DLGF is reluctant to deem Hunt's reclassification from the Database Analyst Senior role to an ASAP Intermediate as a demotion, it does not dispute that Hunt was reassigned to a position of lower rank and pay (Filing No. 51-9 at 12). The Indiana Code states that the "reassignment of a classified employee to a position in a class of a lower rank is a demotion." Ind. Code § 4-15-2.2-35(d); *see also City of Lawrence v. Dullaghan*, 116 N.E.3d 1101, 1106 (Ind. Ct. App. 2018) (stating "the Indiana Code reveals only one definition of the … word 'demotion'"). As the Court noted in its discrimination analysis, a demotion is an adverse employment action. *See Wathen*, 102 F. Supp. 2d at 1022. Hunt satisfies the second element of proving a *prima facie* retaliation claim under the direct method.

Regarding the third element to prove a retaliation claim through the direct method, DLGF asserts that there is no evidence of a causal link between Hunt's 2017 EEOC Charge and either the decision to not select him for the director role or the decision to eliminate the Database Analyst Senior position (Filing No. 50 at 11). DLGF argues that there is no evidence that Maitland knew about the EEOC Charge before he became Director of Information Systems and recommended eliminating the Database Analyst Senior position. *Id*. Further, they argue more than one year had elapsed between the time Hunt filed his EEOC Charge and when Maitland made the recommendation. *Id*.

Hunt responds that causation can be established by showing that the reason given by DLGF to eliminate the Database Analyst Senior position and demote him was pretextual (Filing No. 55 at 28). *See Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018) (finding that causation can be established by circumstantial evidence like "a pretextual explanation"). Hunt argues that DLGF's proffered reason for demoting him—the elimination of the Database Analyst Senior functions from

the Department of Information Systems—is "simply not true." *Id*. at 29. Hunt asserts that he continued performing the same functions as a Database Analyst Senior even after his demotion which belies DLGF's proffered reason. *Id*. Hunt also claims that other retaliatory conduct included the delay in adjusting his Database Analyst Senior pay in August 2018, a month after his EEOC Charge was dismissed. *Id*. Hunt argues DLGF withheld his pay adjustment and demoted him for the same pretextual reasons and there is sufficient evidence to show a causal connection between his protected activity and his demotion and delayed pay adjustment. *Id*. at 30. The Court disagrees.

It is undisputed that Maitland made the recommendation to eliminate the Database Analyst Senior role and reclassify Hunt as an ASAP Intermediate. As DLGF correctly notes, Hunt has not provided evidence to support that Maitland was aware of the 2017 EEOC Charge that was dismissed a month before he was hired as Director of Information Systems (Filing No. 59 at 9). *See Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1122 (7th Cir. 2009) (finding "the employer must have had actual knowledge of the protected activity in order for its decisions to be retaliatory"). Additionally, Hunt fails to demonstrate that the delay in his pay adjustment was linked to his 2017 EEOC Charge. DLGF contends that the delay in adjusting Hunt's pay was the result of a review of Hunt's position which included input from people outside of the department (Filing No. 59 at 8). Hunt has not provided evidence to rebut this legitimate explanation or otherwise demonstrate that it is untrue. Ultimately, Hunt does not provide sufficient evidence to allow a reasonable jury to conclude that "but-for his filing of the EEO complaints," he would not have been demoted or had his pay adjustment delayed. *Abrego* , 907 F.3d at 1015.

Accordingly, Hunt is unable to establish the third element under the direct method to prove a *prima facie* retaliation case, dooming his claim. In viewing the evidence in the record as a whole, there is insufficient evidence that "supports the inference of a causal link" between Hunt's protected

activity and the adverse actions he describes.  *Lang v. Ill. Dep't of Children & Family Servs.*, 361 F.3d 416, 419 (7th Cir. 2004).  Because Hunt did not attempt to prove a retaliation claim under the burden-shifting approach, he does not identify a similarly-situated employee who did not engage in protected activity and was treated more favorably than he was.  *See Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003).  Thus, Hunt is also unable to make a *prima facie* case for retaliation under the *McDonnell Douglas* framework. The Court **grants** DLGF summary judgment on Hunt's Title VII retaliation claim in Count IV and his ADEA retaliation claim in Count VI.

## IV.   <u>CONCLUSION</u>

At the summary-judgment stage, the proper question to ask is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the [plaintiff's] adverse employment action." *Ortiz* at 765. For the foregoing reasons a reasonable factfinder could so conclude with respect to Counts 1 and III of the Complaint. The Court **GRANTS in part and DENIES in part** DLGF'S Motion for Summary Judgment (Filing No. 49).  DLGF is **GRANTED** summary judgment on Hunt's Section 1981 discrimination claim, and his Title VII, Section 1981, and ADEA retaliation claims. Counts II, IV, V, and VI of Hunt's Complaint are **dismissed** (Filing No. 1).  DLGF is **DENIED** summary judgment on Hunt's disputed discrimination claims pursuant to Title VII and the ADEA and Counts I and III of his Complaint **may proceed** beyond the summary judgment stage.

**SO ORDERED.**

Date:   3/23/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

21

DISTRIBUTION:

Gregory A. Stowers
STOWERS & WEDDLE PC
gstowers@stowersandweddle.com

Matthew Jacob Goldsmith
INDIANA ATTORNEY GENERAL'S OFFICE
matthew.goldsmith@atg.in.gov

Winston Lin
INDIANA ATTORNEY GENERAL'S OFFICE
winston.lin@atg.in.gov